| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br>Address:    4000 Justice Way<br>               Castle Rock, CO 80109 | DATE FILED<br>July 3, 2025 2:17 PM<br>FILING ID: F690D9F875C06<br>CASE NUMBER: 2025CV30702 |
| **Plaintiffs:**<br>Jane Rodriguez, an individual; and Jesus Rodriguez, an individual<br><br>v.<br><br>**Defendants:**<br>Safeco Insurance Company of America, a new Hampshire Corporation; and Liberty Mutual Insurance Company d/b/a Safeco Insurance, a Massachusetts Corporation. | ▲COURT USE ONLY▲<br><br>Case Number: _____<br><br>Division:       _____ |
| Attorneys for Plaintiffs<br>Ivan A. Sarkissian, #28817<br>Tyler M. Campbell, #51512<br>McConaughy & Sarkissian, P.C.<br>4725 S. Monaco Street, Suite 200<br>Denver, CO 80237<br>Telephone:    (303) 649-0999<br>Facsimile:     (303) 649-0990<br>isarkissian@mslawpc.com<br>tcampbell@mslawpc.com | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiffs, Jane Rodriguez and Jesus Rodriguez, by and through their attorneys, McConaughy & Sarkissian, Professional Corporation, hereby file this Complaint and Jury Demand as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff, Jane Rodriguez, is an individual who owns the residence located at 415 Bexley Lane, Highlands Ranch, CO, 80126-3546.

2.  Plaintiff, Jesus Rodriguez, is an individual who owns the residence located at 415 Bexley Lane, Highlands Ranch, CO, 80126-3546.

3. Defendant, Safeco Insurance Company of America ("Safeco"), is a New Hampshire Corporation registered with the Colorado Secretary of State as a foreign corporation in good standing, with a principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

4. Defendant, Liberty Mutual Insurance Company ("Liberty"), is a Massachusetts Corporation registered with the Colorado Secretary of State as a foreign corporation in good standing, with a principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

5. Upon information and belief, Safeco was acquired by Liberty in 2008.

6. Collectively, Safeco and Liberty will be referred to as Defendants.

7. This action involves a home insurance policy issued to insure the real property located at 415 Bexley Lane, Highlands Ranch, CO, 80126-3546 ("Home").

8. This Court has jurisdiction over this civil action pursuant to C.R.S. § 13-1-124(1)(a), (b), and (c) because the matter involves alleged breach of contract and other tortious acts concerning the insurance agreement reached between Plaintiffs and Defendants which should have provided coverage for the real property located at 415 Bexley Lane, Highlands Ranch, CO, 80126-3546, which is located in Douglas County, Colorado.

9. Venue is proper in Douglas County, as Defendants did business in Douglas County at all times relevant to this lawsuit and the insured home at the heart of this matter is located in Douglas County.

## **GENERAL ALLEGATIONS**

10. Plaintiffs purchased and renewed their home insurance policy from Defendants, Policy No. OY8057209, with a policy period of December 3, 2023, through December 3, 2025 ("Policy").

11. Under the Policy, Defendants have an obligation and duty to pay certain types of damages as may be incurred by an insured and to provide those services reasonably expected of an insurer in the State of Colorado including without limitation: Claims assistance, investigation, and coverage for damages under the terms and provisions of the Policy.

12. On June 22, 2023, a tornado struck the neighborhood surrounding the Home resulting in significant damage to the Home and surrounding neighborhood ("Storm").

13. On July 2, 2023, Plaintiffs submitted an insurance claim through the Safeco phone application.

14. At the time the claim was filed, Plaintiffs' assigned adjuster was Cristine Liden.

15. At the time the claim was submitted, Mrs. Liden was injured in an non-related event. Her injuries prevented her from accessing the roof of the Home to observe and investigate the damage caused by the Storm.

16. In order to complete their investigation, Defendants retained Seek Now to access the roof and investigate the extent of the damage caused by the Storm.

17. While the claim was pending, Mrs. Liden took a leave of absence and handling of Plaintiffs' claim was reassigned to Sher'E Cutliff.

18. Plaintiffs also retained a third-party roofing consultant to inspect the extent of damage on the roof and provide proposed necessary repairs.

19. The third-party roofing consultant and Ms. Cutliff were provided each other's contact information, and the parties began discussing the roofing claim and the resulting damage from the Storm.

20. The third-party roofing consultant attempted to send documentation regarding the extent of the resulting damage documented at the Home on multiple occasions. In each instance, Ms. Cutliff reported that images and documentation could not be accessed.

21. Documentation provided by Plaintiffs and the third-party roofing consultant supported a position that a full roof replacement was necessary to resolve the resulting damage present from the Storm.

22. Defendants failed to acknowledge or confirm receipt of critical information provided by Plaintiffs or the third-party roofing consultant, which supported the necessity of a full roof replacement.

23. Defendants either disregarded or failed to consider the comprehensive information provided by Plaintiffs and the third-party consultant, which was essential for determining the appropriate scope of repairs required due to the Storm.

24. In adjusting Plaintiffs' claim, Defendants utilized the services of an entity identified to Plaintiffs as Seek Now.

25. Seek Now identifies itself as an insurance property and claim services provider.

26. Seek Now performed an inspection of the Residence in place of, and on behalf of, Defendants on July 12, 2023.

27. Based on the July 12, 2023 inspection, a report was generated and issued by Seek Now ("Report").

28. The Report confirmed that a public adjuster was not present at the time of the inspection.

29. The Report states that the "Seek Now inspector met the adjuster at the loss location to perform the Ladder Assist service" and that "[a]ll inspection findings and damage counts were given to the adjuster onsite."

30. Upon information and belief no adjuster was physically onsite during the inspection performed.

31. The Report further provides that "[a]ll notes and photos taken during the inspection [were] provided in the report[.]"

32. The Report identified, among other things, the following roof conditions and damage at the Home:

   a. Storm related damage caused by Hail at Front Gutter
   b. Storm related damage caused by Hail at the Back Gutter
   c. Ice/Water Shield present at Eaves; and
   d. 15 lb felt underlayment.

33. The Report's documentation of Ice/Water Sheild would not have been possible without removal of shingles. The Report does not document that any shingles were removed during the inspection.

34. The Report's documentation of 15 lb felt underlayment was incorrect. The roof was constructed with CoverPRO 3000, which is not a felt, but a synthetic, more comparable to a 30lb felt.

35. The Report includes images of the inspector using a gauge to measure the shingles, with a designation of "3-tab fiberglass."

36. Use of this gauge was not applicable to the type of roof installed on the Home, nor was the gauge shown being used correctly.

37. The Report documents the use of a "brittleness test" to determine repairability, this is not an industry standard procedure.

38. The Report documents the use of test squares for documentation of wind damage. The use of test squares are only to be used to document hail damage and are not industry standard or applicable to testing for wind as was needed here.

4

39. The Report does not document any inspection of any of the lower roof portions or outside the test square areas. This improperly limited the scope of inspection of the roof for wind and hail damage.

40. The Report does not document any inspection of the roof's valleys for appropriate seal.

41. The Report fails to provide a date of loss.

42. The Report documents an inspection that was not done pursuant to industry standards.

43. The Report documents an inspection that did not review or consider the damage exhibited on the entire roof.

44. The inspection performed on behalf of Defendants was not conducted in a reasonable manner.

45. Defendants knew, or should have known, that the scope, means, and methods of the inspection performed by Seek Now was not reasonable.

46. On October 18, 2023, Defendants issued a payment for $5,106.56 based on this inspection Report and provided a scope of work that needed to be performed in order to address the Storm related damage.

47. The payment issued on October 18, 2023, was not for a full roof replacement as was recommended by the third-party roofing consultants.

48. The payment and scope issued on October 18, 2023, failed to provide any compensation or scope of repair for the gutters at the Home, despite the Report's documenting storm related damage of the gutters.

49. The payment and scope issued on October 18, 2023, failed to provide sufficient scope of repairs to address the wind and hail damage documented on the Home in the Report.

50. The payment and approved scope of repair was insufficient to fully address the resulting damage from the Storm.

51. The payment and approved scope of repair was improperly limited based upon the unreasonable inspection performed.

52. This unreasonably limited scope of repair was such that a permit was not required - meaning the repairs could be performed without the complying with current code requirements at the time.

53. Had the inspection been performed in a reasonable manner, the scope of repair would have been broadened to include additional square footage of replaced roofing materials on the Home's roof.

54. Had the inspection been performed in a reasonable manner, the reasonable scope of repair would have been sufficient to trigger a permit – thus requiring the work be performed in accordance with any current code complaint details.

55. Had Defendants adjusted the claim in accordance with their inspection, the scope of repair would have included the necessary funds and scope to repair to address the damaged gutters.

56. Had Defendants set the scope of repair in accordance with the Report, the scope of repair would have included work to address the damaged gutters – thus requiring the work be performed in accordance with any current code complaint details.

57. The full extent of the resulting damage from the Storm should have been a covered damage pursuant to the Policy.

58. Any required code upgrades that should have been performed on the Home - but for the reasonable inspection - should have been work that was covered pursuant to the Policy.

59. Defendants' denial to pay for and approve this necessary scope of repair of a covered damage was done due to their failure to conduct a reasonable investigation.

60. Defendants' denial to pay for and approve this necessary scope of repair of a covered damage was done either despite information to the contrary, or with the knowledge that information existed, which Defendants deliberately did not consider.

61. Defendants' denial to pay for and approve this necessary scope of repair of a covered damage was not reasonable.

62. Defendants' denial of the claim was done in bad faith.

63. Defendants' failure to perform a reasonable, good-faith inspection resulted in additional damage to the Plaintiffs.

64. Defendants' limitation of required repairs was unreasonable and resulted in additional damage to the Plaintiffs.

## FIRST CLAIM FOR RELIEF
(Declaratory Relief)

65. Plaintiffs incorporate paragraphs 1 through 63, and the allegations contained therein via reference.

66. Plaintiffs, through the Safeco Application, and through email and phone conversations properly tendered their claim to Defendants for purposes of providing claim assistance, investigation, and seeking reimbursement of covered damages.

67. Plaintiffs and Defendants now dispute the rights, obligations, and provisions of the Policy.

68. Defendants failed to investigate or handle Plaintiffs' claims in a reasonable manner.

69. Defendants' claims handling an investigation of the claims was done in bad faith.

70. Plaintiffs continually supplied or attempted to supply Defendants and their agents with all necessary information.

71. Defendants either failed to acknowledge or knowingly ignored the information available to them and/or supplied by Plaintiffs.

72. Defendants made determinations regarding coverage despite their failure to acknowledge or knowingly ignoring the information available to them.

73. Defendants made determinations regarding coverage based upon a failure to perform a reasonable investigation.

74. That on repeated occasions, Defendants had the obligation and opportunity to resolve the claims and resulting damages from the Storm within policy limits but failed to do so.

75. That Defendants instead needlessly, and against the recommendation of experts, limited the scope of the roof repair during the initial claim.

76. That as a consequence of this, resulting damage from the Storm was increased, as the limited scope of repair failed to provide all necessary repairs and kept Plaintiffs' Home from receiving code complaint repair work.

77. But for this unnecessary and unreasonable limitation, the code compliant repair work would have limited damages at the Home.

78. As a result of Defendants' failure to conduct a reasonable investigation, the scope of repair at the Home was unreasonably limited, which led to non-code compliant repairs and resulting damage.

79. As a result of Defendants' failure to approve and pay for a full roof replacement as recommended, Plaintiffs have and continue to suffer damages.

80. That Defendants have disputed and continue to dispute their obligation to the Plaintiffs under the terms and provisions of the Policy.

81. Plaintiffs are entitled to Declaratory Judgment of this Court fixing and determining the rights and obligations of the parties under the Policy and interpreting and resolving the disputed issue under and pursuant to the Policy.

**SECOND CLAIM FOR RELIEF**
(Breach of Insurance Contract)

82. Plaintiffs incorporate paragraphs 1 through 80, and the allegations contained therein via reference.

83. The Policy is a contract between Plaintiffs and Defendants.

84. Plaintiffs, as the named insureds, have standing to assert the claims made herein by virtue of the terms and provisions of the Policy.

85. Plaintiffs have performed or were excused from performing any further obligations under the Policy.

86. Defendants have breached the Policy by, among other things, denying or limiting coverage under the Policy in such a fashion as to prevent Plaintiffs from receiving the full benefits to which they are entitled under the Policy.

87. That the Defendants should be estopped from further denial of insurance benefits under the terms of the Policy because of its conduct and, among other things, failing to properly or adequately reserve its rights; failing to adequately or properly investigate Plaintiffs' claims; failing to pay for damages under the terms and provisions of the Policy where coverage was clear, and by failing to make timely or adequate payments under the terms of the Policy. Instead, the Defendants, unreasonably denied payments required under the Policy or to provide the benefits to which the Plaintiffs were entitled under the Policy.

88. That as a direct and proximate result of the Defendants' breach of the Policy, the Plaintiffs have suffered damages in an amount to be proven at trial, including, but not limited to, the

8

amounts of any denied claim, resulting damages from the denial, annoyance, inconvenience, loss of use, attorney's fees, costs and damages that should have been covered under the terms of the Policy.

### THIRD CLAIM FOR RELIEF
(Common Law Bad Faith)

89. Plaintiffs incorporate paragraphs 1 through 87, and the allegations contained therein via reference.

90. Pursuant to the terms and provisions of C.R.S. §10-1-101(2) the Policy is a contract providing payment of benefits when a loss has occurred as described in the policy and as determined under the substantive law under the State of Colorado. Therefore, the Policy is an insurance policy pursuant to and consistent with the provisions of C.R.S. § 10-10-102.

91. Under the terms and provisions of the Policy, the Defendants were obligated to furnish payment of benefits when a covered loss occurred.

92. Defendants owed and continue to owe a nondelegable duty to deal in good faith with the Plaintiffs in their capacity as insureds under the terms and provision of the Policy.

93. Defendants breached its duties and obligations by failing to act reasonably in the adjustment, investigation, and resolution of the claimed loss; failing to pay for losses that were covered under the Policy; failing to adopt and comply with reasonable standards in connection with the investigation, resolution and adjustment of the claims; unreasonably denying or failing to affirm coverage for the claims; and unreasonably failing to make payment for the scope of work necessary to fully address the Storm's resulting damage.

94. Defendants have undertaken this improper course of conduct and action, not based upon the terms provisions of the Policy or the laws of the State of Colorado.

95. As a direct result of the Defendants' breach of their duties of good faith and fair dealing the Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
(Statutory Bad Faith)

96. Plaintiffs incorporate paragraphs 1 through 94, and the allegations contained therein via reference.

97. The Plaintiffs fall within the category of persons protected and for which the provisions C.R.S. § 10-3-1115 and 1116 were intended to protect.

9

98. The Plaintiffs are a 'first party claimant' within the meaning and for the purposes of C.R.S. § 10-3-1115 and 1116.

99. Defendants, by their conduct, wrongfully and unreasonably delayed or denied payment of a benefit for the claims that were made by Plaintiffs under the terms and provision of the Policy.

100. Plaintiffs have suffered damages as a direct and proximate result of the unreasonable conduct of the Defendants.

101. In addition to any other damages or relief available to the Plaintiffs, the Plaintiffs are entitled to recover damages as set forth by C.R.S. § 10-3-1116 in an amount to be proven at trial, including two times the amount of benefits owed under the terms of the Policy, and such other relief as is available under the terms and provisions of the Policy, together with any natural and probable damages caused by the conduct of the Defendants.

102. These are in addition to any other damages or relief available to the Plaintiffs, the Plaintiffs are entitled to recover its costs and attorney's fees pursuant to C.R.S. § 10-3-1116.

## **PRAYER FOR RELIEF**

A. Plaintiffs seek a Declaratory Judgment of this Court fixing and determining the rights and obligations of the parties under the Policy and interpreting and resolving the issues under and pursuant to the Policy;

B. Plaintiffs seek damages for breach of contract in an amount to be proven at trial including, but not limited to, the amounts of any underlying claim, annoyance, inconvenience, loss of use, together with any natural and probable damages caused by the conduct of Defendants;

C. Plaintiffs seek to recover damages in an amount to be proven at trial for Defendants' breach of Colorado's Common Law Good-Faith obligations owed to Plaintiffs;

D. Plaintiffs seek to recover damages as set forth by C.R.S. § 10-3-1116 in an amount to be proven at trial, under the terms of the Policy, and two times the covered benefit of that amount as awardable under Colorado law;

E. For all other costs, expenses, and attorney's fees as allowed by law or contract;

F. For pre- and post-judgment interest as allowed by law; and

G. For such other and further relief this Court deems just and proper.

**PLAINTIFFS MAKE DEMAND FOR A JURY OF SIX ON ALL ISSUES AND ALL CLAIMS**

Dated this 3rd day of July, 2025.

Respectfully submitted,

McCONAUGHY & SARKISSIAN
Professional Corporation

SIGNATURE ON FILE WITH MCCONAUGHY & SARKISSIAN, P.C.

By: */s/ Tyler M. Campbell*
     Ivan A. Sarkissian, #28817
     Tyler M. Campbell, #51512

Attorneys for Plaintiffs

Plaintiffs Address:
415 Bexley Lane
Highlands Ranch, CO, 80126-3546

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of July, 2025, a true and correct copy of the foregoing **COMPLAINT AND JURY DEMAND** was filed with the Court and served via CCEF and addressed to all active counsel of record on CCEF's service list.

*/s/ Sabrina Cooper*
SIGNATURE ON FILE WITH MCCONAUGHY & SARKISSIAN, P.C.

11